**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**


**COREY BOONE,**

      **Petitioner,**

**v.**                                   **Case No. 8:18-cv-214-T-35SPF**

**FLORIDA COMMISSION ON
OFFENDER REVIEW, and
SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondents.**
_____/

## O R D E R

    This cause is before the Court on Petitioner Corey Boone's timely-filed *pro se* petition for the writ of habeas corpus under 28 U.S.C. §§ 2241 and 2254. (Doc. 1) Upon consideration of the petition, the response (Doc. 10), and the reply (Doc. 11), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the Court **ORDERS** that the petition is **DENIED**:

### BACKGROUND AND PROCEDURAL HISTORY

    Boone was convicted of first degree murder and armed burglary in 1991. (Doc. 10-4 Ex. 3 at record pp. 43-47) He was sentenced to life imprisonment with a twenty-five year minimum mandatory term for first degree murder, and to three years in prison for armed burglary. (Doc. 10-4 Ex. 3 at record pp. 45-46) Boone's life sentence is a parole-eligible sentence.[1] In 2015, the Florida Commission on Offender Review ("Commission")

---

[1] The Florida Legislature amended Florida's sentencing laws effective May 25, 1994, to eliminate the possibility of parole for first degree murder convictions. The amendment does not apply to offenses

conducted a review of Boone's case. In this petition, Boone challenges the Commission's determination of his presumptive parole release date ("PPRD") and his next interview date.

In establishing a PPRD, the Commission obtains a salient factor score based on "indices of the offender's present and prior criminal behavior and related factors found by experience to be predictive in regard to parole outcome." Fla. Admin. Code R. 23-21.002(43). The salient factor score and offense severity level, taken together, result in a matrix time range. Fla. Admin. Code R. 23-21.009. Boone's salient factor score of one and his offense severity level of six led to a matrix time range of 120 to 180 months.  (Doc. 10-4 Ex. 3 at record p. 49)

The Commission may set a PPRD outside of the matrix time range if the Commission applies aggravation or mitigation and provides the inmate with a written explanation. Fla. Admin. Code R. 23-21.010(1). Aggravating circumstances used to set a PPRD above the upper end of the matrix time range must be based on competent and persuasive evidence. Fla. Admin. Code R. 23-21.010(1). The requirements of competent and persuasive evidence are "[t]hat the information is specific as to the behavior alleged to have taken place" and "[t]he source of the allegation appears to be reliable." Fla. Admin. Code R. 23-2.010(1)(a), (b).

A Commission Investigator interviewed Boone in April 2015, and the Commission reviewed Boone's case in June 2015. The Commission applied several aggravating factors when it set Boone's PPRD. As relevant here, the Commission added 180 months for the aggravator that the "[o]ffense involved the act of shooting into an occupied

---

committed before its effective date. *See Calandra v. State*, 64 So.3d 156, 156 n.1 (Fla. 4th DCA 2011); Ch. 94-228, § 1, Laws of Fla.

dwelling[.]" (Doc. 10-2 Ex. 1 at record p. 23) The Commission also added 180 months for the aggravator of "[p]hysical & psychological trauma suffered by the victim as she was aware of her impending death after being shot one time and then chased by the inmate and shot three more times[.]" (Doc. 10-2 Ex. 1 at record p. 23) The order notes that "[m]itigation was considered." (Doc. 10-2 Ex. 1 at record p. 23) The Commission did not apply mitigation in calculating Boone's PPRD. The Commission set Boone's PPRD as September 17, 2040. (Doc. 10-2 Ex. 1 at record p. 23) The Commission set Boone's next interview in February 2022. (Doc. 10-2 Ex. 1 at record p. 23)

Boone requested administrative review of the PPRD and next interview date under § 947.173, Fla. Stat., and Fla. Admin. Code R. 23-21.012(1). (Doc. 10-4 Ex. 3 at record pp. 51-59) Upon that review, the Commission declined to change Boone's PPRD or his next interview date. (Doc. 10-4 Ex. 3 at record p. 61) Boone then filed a petition for writ of mandamus in the state circuit court in which he challenged the determination of his PPRD and next interview date and asked that the Commission be directed to modify the PPRD and next interview date. (Doc. 10-2 Ex. 1) The state court denied Boone's mandamus petition. (Doc. 10-6 Ex. 5) Boone filed a petition for writ of *certiorari* in the state appellate court, seeking review of the state circuit court's denial of his mandamus petition. (Doc. 10-7 Ex. 6) The state appellate court *per curiam* denied Boone's petition for writ of *certiorari*. (Doc. 10-12 Ex. 10)

## STANDARD OF REVIEW

Boone files his petition under 28 U.S.C. §§ 2241 and 2254. The petition is subject to the requirements of § 2254 because Boone is in custody under a state court judgment. "[A] habeas petition filed by a state prisoner in custody pursuant to the judgment of a state

court is subject both to § 2241 and to § 2254, with its attendant restrictions." *Thomas v. Crosby*, 371 F.3d 782, 785 (11th Cir. 2004). Since § 2254 "is triggered where a prisoner is 'in custody pursuant to the judgment of a state court'", it follows that § 2254 applies when a state prisoner "challenges parole decisions." *Id.* at 787.

Because this petition was filed after April 24, 1996, it is governed by amendments to § 2254 set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Section 2254, as amended by the AEDPA, "imposes a highly deferential standard for

4

state-court rulings and demands that state-court rulings be given the benefit of the doubt."

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).

## DISCUSSION

Boone raises five claims in his petition:

1.   The Commission erred in applying the aggravating factor of shooting into an occupied dwelling because that factor is not supported by competent and persuasive evidence.

2.   The Commission erred in applying the aggravating factor of shooting into an occupied dwelling because that factor is based on a criminal action for which he was not charged or convicted.

3.   The Commission erred in applying the aggravating factor of physical and psychological trauma to the victim because that factor is not supported by competent and persuasive evidence.

4.   The Commission has a policy against applying mitigating factors, and erred in not applying mitigation in his case.

5.   The Commission erred in setting his next interview date in February 2022.

Respondent contends that Boone's claims are not cognizable because they only involve matters of state law. A review of the petition shows that Boone claims violations of his federal rights to due process and equal protection with respect to Claims Four and Five. Further, in the introduction to his claims, Boone cites the Fifth and Fourteenth Amendments to the United States Constitution in asserting that parole decisions affecting him must comply with constitutional requirements. Accordingly, the Court liberally interprets Claims One, Two, and Three as alleging federal due process violations. The Court therefore concludes that Boone's claims are cognizable in this proceeding. However, Boone fails to show entitlement to federal habeas relief.

**I.       Procedural Default: Claim Three**

In Claim Three, Boone contends that the Commission improperly assessed aggravation for the physical and psychological trauma suffered by the victim in setting his PPRD, resulting in a federal due process violation. When Boone raised this claim in his state mandamus petition, the state court found that the claim was barred because Boone did not first raise the claim in administrative proceedings (Doc. 10-6 Ex. 5 at record pp. 92-93) (state court's record citation omitted):

> Petitioner's challenge to the assessment of the "physical and psychological trauma" aggravator is not properly before this Court. Petitioner did not raise this issue in his August 5, 2015, request for review. Petitioner did not raise this issue with the Commission, and so he has failed to exhaust his administrative remedies on this issue. He is thus prohibited from raising it here. See Riddell v. Fla. Dep't of Corrections, 538 So.2d 132, 133 (Fla. 1st DCA 1989); Dodd v. Fla. Parole & Probation Comm'n, 380 So.2d 556 (Fla. 1st DCA 1980); Gonzalez v. Fla. Parole & Probation Comm'n, 421 So.2d 675 (Fla. 1st DCA 1982); Polk v. Crockett, 379 So.2d 369 (Fla. 1st DCA 1980); Morris v. Fla. Parole & Probation Comm'n, 423 So.2d 491 (Fla. 1st DCA 1982). Petitioner is entitled to no relief on this claim, and it is denied.

A petitioner's failure to comply with state procedural rules governing proper presentation of a claim typically bars review of that claim in a federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (stating that a federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir. 1998) ("A federal court must dismiss those claims that are procedurally barred under state law.").

6

A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim; (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law; and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

In Florida, exhaustion of administrative remedies is required before seeking judicial review of the Commission's decision or action. *See Riddell v. Fla. Dep't of Corr.*, 538 So.2d 132, 133 (Fla. 1st DCA 1989) ("Since Riddell failed to seek administrative review on the argument raised in his petition for writ of mandamus [challenging the Commission's calculation of his PPRD], the trial court correctly denied the petition."); *Kirsch v. Greadington*, 425 So.2d 153, 155 (Fla. 1st DCA 1983) (dismissing mandamus petition challenging the extension of a prisoner's PPRD because the prisoner did not allege that he sought and received administrative review); *Gonzales v. Fla. Parole and Probation Comm'n*, 421 So.2d 675, 676 (Fla. 1st DCA 1982) (stating that an inmate who failed to seek administrative review "is precluded from raising on appeal these issues which relate to the establishment of his PPRD."); *Dodd v. Fla. Parole & Probation Comm'n*, 380 So.2d 556, 557 (Fla. 1st DCA 1980) ("Petitioner's apparent failure to avail himself of this administrative remedy [to challenge his PPRD] precludes mandamus relief.").

Boone's failure to pursue administrative remedies thus resulted in a default when he presented the claim for judicial review. Florida's rule requiring exhaustion of

administrative remedies prior to seeking judicial review of a PPRD decision is independent of federal law and adequate to support the state court's ruling. There is no indication that this procedural rule was applied to Boone in an arbitrary, unprecedented, or manifestly unfair manner. The state court's reliance on an independent and adequate state bar to dispose of Boone's claim results in a procedural default on federal habeas review. *Judd*, 250 F.3d at 1313.

Boone's defaulted claim can only be considered if Boone meets either the cause and prejudice or the fundamental miscarriage of justice exception. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" that one of these exceptions applies). Boone concedes that he did not exhaust his administrative remedies. However, he has not argued or established the applicability of either exception.[2] Accordingly, the argument raised in Claim Three, that the Commission violated Boone's federal due process rights by applying the aggravator that the victim experienced physical and psychological trauma, is procedurally defaulted and barred from federal habeas review.

## II.   Merits Review: Claims One, Two, Four, and Five

Respondent concedes that Boone has exhausted his other claims.

### A.   Due Process

---

[2] Boone contends that "there is an exception to the administrative exhaustion doctrine because the exhaustion of administrative remedies is **not** required if it would be 'futile' because, like here, it is clear that the claim will be rejected." (Doc. 11 at 4) (emphasis in original) However, Boone's claimed exception is not one of the two recognized exceptions to overcome the procedural default of a claim raised in a § 2254 proceeding. *See Harris*, 489 U.S. at 262. To the extent Boone may attempt to argue that the claim should not be considered defaulted because the state court incorrectly applied a state procedural rule to him, his argument fails. His claim that such an exception exists within Florida's established system for reviewing parole decisions and applies to him is conclusory and unsupported by authority.

In all four remaining claims, Boone contends that the Commission violated his federal due process rights. Generally, to assert a due process violation, a person must have a liberty interest created by the United States Constitution or by a state. *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991). The United States Constitution "does not confer a liberty interest in parole." *Id.* (citing *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979)). Similarly, Florida law does not create a liberty interest in parole. *See Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986) ("There is no constitutional right to parole in Florida."); *Damiano v. Fla. Parole and Probation Comm'n*, 785 F.2d 929, 932 (11th Cir. 1986) (stating that as "the ultimate parole decision is a matter of Parole Commission discretion", the calculation of an inmate's PPRD "does not create a liberty interest[.]" (citing *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982))); *Hunter v. Fla. Parole & Probation Comm'n*, 674 F.2d 847, 848 (11th Cir. 1982) (stating that the petitioner could not show a due process violation by alleging that the Commission improperly calculated his PPRD because there is no liberty interest in parole). When there is no liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995) (quoting *Slocum v. Ga. State Board of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir. 1982)).

Even in the absence of a liberty interest, however, a prisoner's due process claim can be sustained if the prisoner shows that the Commission engaged in action that was arbitrary or capricious, or was flagrant or unauthorized. *Monroe*, 932 F.2d at 1441-42; *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). For instance, a parole commission's use of admittedly false information may be sufficient to warrant federal

habeas relief. *See Monroe*, 932 F.2d at 1441-42 (finding that a parole board acted in violation of a prisoner's due process rights when it treated the prisoner "arbitrarily and capriciously" by "relying on . . . false information in [the prisoner's] file[.]").

Unless such action is shown, however, "discretionary power vested in a parole board will not be interfered with by the Federal courts." *Thomas*, 691 F.2d at 489. Further, conclusory claims about the Commission's decision making without evidentiary support do not establish a due process violation. *See Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) ("While we have held that the use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim. Without evidence of the Board's reliance on false information, a prisoner cannot succeed.").

**B.     Claims One and Two**

In Claims One and Two, Boone argues that the Commission improperly aggravated his PPRD on the basis that the "[o]ffense involved the act of shooting into an occupied dwelling", resulting in a federal due process violation. In Claim One, Boone asserts that this aggravator was not supported by competent and persuasive evidence because the evidence did not show that he shot from outside the home "into" the home's interior. In Claim Two, Boone argues that this aggravator was based on a criminal action for which he was not charged or convicted and thus was never presented to a jury and proven beyond a reasonable doubt.

The state court denied Boone's challenge to the utilization of this aggravator in establishing his PPRD (Doc. 10-6 Ex. 5 at record pp. 90-92) (state court's record citations, footnote, and brackets around original alterations omitted) (emphasis in original):

10

In its June 10, 2015, Order on Initial Interview, the Commission assessed 180 months to Petitioner's PPRD for the aggravator of "the offense involved the act of shooting into an occupied dwelling, per the Polk County Sheriff's Office." Petitioner claims there is "no evidence whatsoever" demonstrating that the "offense involved the act of shooting into an occupied dwelling." Petitioner argues that the records provided by the Polk County Sheriff's Office only demonstrate that he "shot the victim once outside of her home" and that "she ran into a neighbor's residence, followed by him," and that "he then entered the neighbor's residence and shot her approximately three or four more times." Petitioner posits a legal distinction between shooting *into* a dwelling and shooting *inside* a dwelling. Section 790.19, Fla. Stat., which makes shooting into an occupied dwelling a criminal offense, explicitly sets forth that an individual who "shoots at, within, or into" any "public or private building, occupied or unoccupied" is guilty of a second degree felony. See [§] 790.19, Fla. Stat. The law makes no distinction between shooting *into* a dwelling and shooting *inside* a dwelling, and the Commission is not required to do so. Petitioner's argument here is without merit and is denied on the merits.

In the exercise of its duties, the Commission is entitled to rely on information contained in any information compiled by the Department in the performance of its statutorily mandated record-keeping duties. Adams [v. State], 560 So.2d [321,] 322 [(Fla. 1st DCA 1990)]. The Department has maintained the September 17, 1990 Polk County Sheriff's Office arrest report as part of its records. According to the September 17, 1990 Polk County Sheriff's Office arrest report, witnesses Janice and [Eric] Williams advised the arresting officer that after hearing shots outside, they observed the victim as she ran screaming inside their residence, and that the Petitioner followed the victim inside and shot . . . her two or three times. Additionally, Petitioner himself admits in both his August 5, 2015, request for review and in the underlying petition that he shot the victim inside Janice and Eric Williams's residence. Petitioner's claim that there is insufficient evidence to support the assessment of the "shooting into an occupied dwelling" aggravator is denied on the merits.

Additionally, Petitioner argues that because he was never charged for the criminal offense of Shooting into an Occupied Dwelling, the Commission may not use these circumstances, which amount to an uncharged offense, to assess an aggravator. Petitioner's claim here is without merit. The Commission may aggravate an inmate for crimes committed by the offender for which he was not charged. [Fla. Parole and Probation Comm'n v.] Griffin, 497 So.2d [1242,] 1245 [(Fla. 2d DCA 1986)]. See also Calloway [v. Fla. Parole & Probation Comm'n], 431 So.2d [300,] 300 [(Fla. 1st DCA 1983)].

Pursuant to [§] 790.19, Fla. Stat., any individual who

> *wantonly or maliciously, shoots at, within, or into*, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in *any public or private building, occupied or unoccupied*, . . . *shall be guilty of a felony of the second degree*, punishable as provided in [§] 775.082, [§] 775.083, or [§] 775.084.

Section 790.19, Fla. Stat. (*emphasis added*).

The facts as reported in the September 17, 1990 Polk County Sheriff's Office arrest report and in the Petitioner's own admissions in his August 5, 2015, request for review and in the instant petition demonstrate that the circumstances of the offense meet the [§] 790.19, Fla. Stat. statutory elements of Shooting into an Occupied Dwelling. The circumstances supporting the assessment of the aggravator that "the offense involved the act of shooting into an occupied dwelling," are derived from information that is competent and from reliable sources. Petitioner has failed to establish error in this assessment, or in the sources from which the information is derived. Petitioner's claim that there is no evidence supporting the assessment of the "shooting into an occupied dwelling" aggravator is denied on the merits. Likewise, Petitioner's claim that the Commission may not aggravate for an uncharged offense is denied on the merits.

Boone fails to show entitlement to relief. As addressed, Boone has no liberty interest in the determination of his PPRD. Therefore, to establish a federal due process violation, Boone must show that the Commission engaged in an action that was arbitrary or capricious, or was flagrant or unauthorized. *See Monroe*, 932 F.2d at 1441; *Thomas*, 691 F.2d at 489.

First, Boone does not establish a federal due process violation on the basis that the aggravator was not supported by competent and persuasive evidence. Initially, to the extent that Boone's claim involves the definitions of shooting "into" or "within" an occupied dwelling under state law, this Court must defer to the state court's analysis and interpretation of Florida law. *See McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992) ("State courts are the ultimate expositors of their own state's laws, and federal

courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases.").

Further, Boone does not show that the state court erred in its determination that the evidence supporting this aggravator was derived from competent, reliable sources upon which the Commission was entitled to rely. Indeed, Boone admits that the Commission's "files and records" show he shot the victim after he followed her inside the home. (Doc. 1 at 11-12) Boone fails to show any activity by the Commission that was flagrant or unauthorized, or arbitrary or capricious. Accordingly, Boone has not demonstrated that the Commission violated his federal due process rights by applying an aggravator that was not supported by competent and persuasive evidence.

Nor does Boone establish that the Commission violated his federal due process rights in applying this aggravator even though he was not charged with or convicted of the separate offense of shooting into an occupied dwelling. Although the Commission cannot aggravate a PPRD by considering an offense for which a prisoner was acquitted, *see* Fla. Admin. Code R. 23-21.010(2)(d), aggravating factors may involve uncharged crimes as well as the circumstances of the offense. *See Fla. Parole and Probation Comm'n v. Griffin*, 497 So.2d 1242, 1245 (Fla. 2d DCA 1986) ("Aggravating factors may reflect crimes committed by the offender for which he was not charged."); *Faucett v. Wainwright*, 419 So.2d 765, 766 (Fla. 1st DCA 1982) ("One purpose for applying aggravating factors is to permit the Commission to reflect the actual circumstances of the inmate's offenses."). Boone fails to show that the Commission acted in an arbitrary or capricious manner, or engaged in flagrant or unauthorized activity, in utilizing this aggravator to determine his PPRD even though he was not charged with or convicted of

the offense of shooting into an occupied dwelling. He was in fact charged and convicted of a shooting that occurred inside a dwelling. The finding of the state court that there is no distinction between shooting into and shooting inside a dwelling for purposes of the aggravator further supports the commission's conclusion that the aggravator properly applied. Therefore, Boone cannot show that the state court unreasonably rejected his federal due process challenge to the Commission's application of the aggravating factor that the offense involved shooting into an occupied dwelling.

Boone has not demonstrated that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination. Consequently, he fails to show entitlement to relief on Claim One or Claim Two.

**C.    Claim Four**

The Commission considered but did not apply mitigation in determining Boone's PPRD. Boone claims that the Commission's failure to apply mitigation violated Florida's Objective Parole Guidelines Act of 1978[3] and was in keeping with an unwritten, blanket policy of refusing to apply mitigation. Boone contends that the Commission's action resulted in violations of his federal rights to due process and equal protection. Boone argues that if the Commission had "actually exercised its discretion" using "fair and uniform criteria," his PPRD would have been mitigated. (Doc. 1 at 18)

---

[3] *See Paschal v. Wainwright*, 738 F.2d 1173, 1175 (11th Cir. 1984) (explaining that in July 1978, the Florida Legislature passed the Objective Parole Guidelines Act of 1978, which "required the Commission to adopt parole 'guidelines,' creating presumptive parole release dates based on the 'seriousness of the offense' committed and 'the likelihood of a favorable parole outcome,' and to consider these guidelines in making release decisions.").

Boone identifies potential mitigating factors that he contends the Commission should have applied. Boone asserts that, due to his age at the time of the murder (20 years old), he had a diminished capacity to understand the seriousness of his actions and their consequences and had diminished mental capacity to contemplate the seriousness of the offense. (Doc. 1 at 18) Boone lists other factors, such as the following: he lived without violating the law prior to the offense; the victim "induced or facilitated the offense" by "seeing other men;" he acted under strong provocation or duress and there is substantial evidence tending to excuse or justify the crime; he has gained education and skills that would allow him to obtain employment; he enjoys strong family ties and the availability of "extremely strong community resources;" and, he has "made a record of clearly exceptional program achievement." (Doc. 1 at 18-19)

When the state court denied Boone's mandamus petition, it rejected his claim that the Commission improperly failed to apply mitigation (Doc. 10-6 Ex. 5 at record p. 93) (state court's record citations omitted):

> Petitioner claims the Commission should be required to accept "the competent and persuasive evidence" he provided as sufficient to establish mitigation to reduce his PPRD. The Commission is not required to mitigate an inmate's PPRD. See Rule 23-21.010(4) and (5), [Florida Administrative Code]. See also Baker v. Fla. Parole and Probation Comm'n, 384 So.2d 746 (Fla. 1st DCA 1982). The decision to apply mitigation is a discretionary decision, resting exclusively with the Commission, and so it is not amenable to mandamus relief. Adams, 560 So.2d at 322. In establishing Petitioner's September 17, 204[0], PPRD, the Commission considered mitigation, but did not find mitigation sufficient enough to reduce Petitioner's PPRD. Petitioner's claim that he is entitled to particular mitigation is denied on the merits.

Boone does not show that the state court unreasonably denied his claim. As an initial matter, to the extent Boone contends that the Commission violated Florida's Objective Parole Guidelines Act, any alleged violation of state law does not provide a

15

basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Nor does Boone show any federal constitutional violation. The Commission's order on review of Boone's case states that mitigation was considered. As the state court noted, the decision to apply mitigation is a discretionary function of the Commission. *See* Fla. Admin. Code R. 23-21.010(1) ("The Commission may render a decision outside the matrix time range based on any competent and persuasive evidence relevant to aggravating and mitigating circumstances if the inmate is furnished a written explanation of such a decision."); *see also Lobo v. Fla. Parole and Probation Comm'n*, 433 So.2d 622, 623 (Fla. 4th DCA 1983) (stating that the decision whether to apply mitigation in calculating a PPRD "is a discretionary one, and [a state court hearing a mandamus petition] cannot substitute its judgment for that of the agency unless the decision is outside of the range of discretion given to the agency, is inconsistent with other agency policy, or is in violation of a constitutional or statutory provision."). Boone was not entitled to the application of mitigation in setting his PPRD. He fails to show that the Commission's decision not to apply mitigation, which fell within the scope of its discretionary decision-making authority, was arbitrary or capricious, or was flagrant or unauthorized. Thus, there is no basis for federal judicial intervention in the Commission's discretionary decision. *See Thomas*, 691 F.2d at 489.

Further, to the extent Boone claims that the Commission acted contrary to its obligations and duties because it followed an "unwritten" policy against applying

mitigation, he cannot obtain relief. Boone points to decisions of the Commission made between July 8, 2015 and December 9, 2016, which are available online.[4] Boone claims that these decisions show "the Commission has a blanket, *sub rosa* policy against actually applying any mitigating factors when establishing inmates' PPRDs[.]" (Doc. 1 at 17) However, Boone only cites Commission decisions that were entered after the June 12, 2015 decision in his case. The Commission's rejection of mitigation in later cases is not pertinent to the decision made in Boone's case and does not establish the existence of a policy against applying mitigation in effect at the time Boone's PPRD was set.

Moreover, Bone simply has not come forward with any evidence that the Commission's decision not to apply mitigation in his case or in any other case is the result of an unwritten, blanket rule against applying mitigation. Boone only speculates that such a policy exists. However, conclusory allegations of wrongdoing are insufficient to establish a due process claim. *See Jones*, 279 F.3d at 946 (stating that a prisoner's conclusory allegation of improper action by a parole commission is insufficient to establish a due process violation). Further, a claim that a parole commission failed to "abide by its own rules and regulations does not allege a constitutional violation[.]" *Jonas v. Wainwright*, 779 F.2d 1576, 1578 (11th Cir. 1986). Accordingly, Boone shows no federal due process violation in the Commission's decision not to apply mitigation.

Boone also claims that the Commission's failure to apply mitigation violated his right to equal protection. However, Boone fails to establish an equal protection violation because he does not explain how he was treated differently than any other similarly-situated prisoner based on a protected interest. *See Jones*, 279 F.3d at 946-47 (stating

---

[4] Boone refers to the website for the State of Florida's Division of Administrative Hearings, which may be found at https://www.doah.state.fl.us.

that to establish an equal protection claim, a prisoner must show both that he is similarly situated to other prisoners who received more favorable treatment and that the discriminatory treatment was based on a constitutionally protected interest).

Boone has not established that the Commission violated his federal rights when it declined to apply mitigation in determining his PPRD. As Boone does not show that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination, Boone is not entitled to relief on Claim Four.

### D.    Claim Five

Boone argues that the Commission violated his rights to due process and equal protection by setting his next interview in February 2022. He further claims that this decision violated the Objective Parole Guidelines Act of 1978. Boone claims that the act of setting his next interview almost seven years after his initial interview was arbitrary and capricious. Florida law provides for periodic parole interviews. § 947.174, Fla. Stat. An inmate's next parole interview date may be set up to seven years from the last interview if the inmate is incarcerated for a qualifying offense, and if "the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing." § 947.174(1)(b), Fla. Stat.

The Commission listed three reasons for its decision to set Boone's next interview date in February 2022: (1) the use of a firearm; (2) the physical and psychological trauma to the victim; and (3) "any release would pose an unreasonable risk to others." (Doc. 10-2 Ex. 1 at record p. 23) Boone claims that the finding that his release would pose an "unreasonable risk" to others is contradicted by his salient factor score of one, which is at

18

the low end of the salient factor score range.[5] Boone contends that this score shows he does not pose such a risk. In support, Boone cites *Battis v. Fla. Parole and Probation Comm'n*, 386 So.2d 295, 296-97 (Fla. 1st DCA 1980) for the proposition that a "salient score of zero is the most favorable category, indicating in actuarial terms that the risk of an inmate violating the terms of any subsequent parole is slight."

The state court rejected Boone's challenge to his next interview date (Doc. 10-6 Ex. 5 at record pp. 93-94) (state court's record citations and brackets around original alterations omitted):

> Petitioner claims the Commission improperly set his subsequent interview date out seven years, to 2022. Petitioner argues that the Commission's stated reasons for doing so, namely (1) the use of a deadly weapon, a firearm; (2) that his release would pose an unreasonable risk to others; and (3) the physical and psychological harm to the victim, are somehow inconsistent with his "minimal salient factor score." This inconsistency, he argues, makes the 2022 date improper.
>
> Pursuant to [§] 947.174(1)(c), Fla. Stat., once an inmate's PPRD is established, the Commission must conduct regular reviews and interviews to determine "whether or not information has been gathered which might affect the PPRD." <u>See</u> [§] 947.174(1)(c), Fla. Stat. Pursuant to [§] 947.174(1)(b), Fla. Stat. the Commission is permitted to impose an extended interview interval, up to seven years out, for offenders with a qualifying offense. <u>See</u> [§] 947.174(1)(b), Fla. Stat. Here, Petitioner was convicted of murder, a qualifying offense. <u>See</u> [§] 947.174(1)(b), Fla. Stat. At its June 10, 2015 meeting, the Commission voted to extend Petitioner's subsequent interview date out seven years, to 2022, and listed its reasons for so doing. Petitioner has shown no error in this determination. Petitioner's claim that he is entitled to an earlier subsequent interview date is denied on the merits.

---

[5] Rule 23-21.007 of the Florida Administrative Code addresses salient factor scoring. The salient factor score is calculated by assessing points in six categories: (1) the number of prior convictions; (2) the number of prior incarcerations; (3) the total time imposed in years for prior incarcerations; (4) the number of probation, parole, or mandatory conditional release violations; (5) the number of prior escape or attempted escape convictions; and (6) whether burglary, breaking and entering, or robbery is a present offense of conviction. An offender who receives the maximum possible score in each category would obtain a salient factor score of 11.

Any alleged violation of Florida law in calculating Boone's next interview date does not state a basis for federal habeas relief. *Branan*, 861 F.2d at 1508; *McGuire*, 502 U.S. at 67-68. Further, Boone has not shown any federal due process violation in the Commission's decision to set his next interview date in February 2022. Although Boone's salient factor score is on the low end of the possible range, because Boone is incarcerated for a qualifying offense, the Commission was authorized under Florida law to set his next interview date within seven years if it explained its reasoning, which it did. § 947.174(1)(b), Fla. Stat.

While Boone believes there is an inconsistency between a salient factor score of one and the Commission's identified reason that his release would pose an unreasonable risk of harm to others, Boone does not show that the Commission's ultimate decision violated his due process rights. This was only one of three reasons that impacted the Commission's decision on Boone's next interview date. Furthermore, since Boone has no liberty interest in parole, he has no liberty interest in the procedures related to consideration for parole. *See, e.g., Slocum v. Ga. State Board of Pardons and Paroles*, 678 F.2d 940, 941-42 (11th Cir. 1982) (rejecting a claim of "a protectable entitlement to parole consideration", as the procedures followed in making the parole determination need not comport with standards of fundamental fairness unless there is liberty interest in parole). Moreover, Boone does not show that the Commission acted arbitrarily or capriciously, or in a flagrant or unauthorized manner, in determining his next parole interview date. As a result, he fails to show a federal due process violation.

Finally, similar to Claim Four, Boone's generalized allegation of a violation of his right to equal protection is insufficient to establish a claim because he fails to explain how

he was treated differently than any other similarly-situated prisoner on the basis of a protected interest. *See Jones*, 279 F.3d at 946-47. Thus, Boone fails to show any federal constitutional violation by the Commission in setting his next interview date. As Boone does not demonstrate that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination, he is not entitled to relief on Claim Five.

## III.   New Claim In Boone's Reply

In his reply, Boone argues that his PPRD determination violates his federal rights to due process and equal protection on different grounds than those raised in his petition. Boone contends that, although he is technically eligible for parole, the laws governing parole operate so that his sentence "actually resembles a life sentence without the possibility of parole." (Doc. 11 at 5) He claims that such a *de facto* sentence of life without the possibility of parole is disproportionate to the offense he committed.

Boone may not bring a new claim in the reply. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citation omitted); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (stating that a court will "not address arguments raised for the first time in a *pro se* litigant's reply brief."). Furthermore, notwithstanding the prohibition on bringing a new claim in the reply, Boone did not exhaust this claim in state court, as he must to bring it in a federal habeas petition under § 2254, because he did not raise the claim in his state mandamus petition. (Doc. 10-2 Ex. 1) Accordingly, the new claim in Boone's reply does not afford him federal habeas relief.

It is therefore **ORDERED** that Boone's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Boone and to **CLOSE** this case.

<u>**CERTIFICATE OF APPEALABILITY**</u>
<u>**AND**</u>
<u>**LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**</u>

**IT IS FURTHER ORDERED** that Boone is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. Section 2253(c)(2) limits the issuing of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Boone must show that reasonable jurists would find debatable both the merits of the claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to make this showing, Boone is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Boone must obtain permission from the Circuit Court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 28th day of December, 2020.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE